**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Myrna E. D.,                                         Civ. No. 20-887 (BRT)

         Plaintiff,

v.                                                    **MEMORANDUM**
                                                        **OPINION AND ORDER**

Andrew Saul,
Commissioner of Social Security,

         Defendant.

Edward C. Olson, Esq., Attorney at Law; and Karl E. Osterhout, Esq., Osterhout Disability Law, LLC, counsel for Plaintiff.

James D. Sides, Esq., Social Security Administration, counsel for Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final administrative decision of the Commissioner of Social Security ("the Commissioner") denying her application for Social Security disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 17, 20.) For the reasons stated below, Plaintiff's motion is granted in part, and Defendant's motion is denied.

## BACKGROUND

### I.   Factual Background

Plaintiff is a 49-year-old woman who underwent an above the knee amputation on her left leg when she was 17 years old due to lymphedema. (Tr. 320.)[1] She used a single orthotic prothesis for her left leg for over 20 years. (Tr. 320.)

Plaintiff completed high school in Mexico up to the equivalent of an 11th grade level and then obtained a GED in the United States. (Tr. 20, 39.) From 2005 to 2016, Plaintiff worked as a line worker at a poultry factory. (Tr. 207.) On August 31, 2016, she left her job at the factory due to wrist pain, low back pain, and stump pain caused by her prosthesis poorly fitting. (Tr. 40, 200, 315, 320.)

In September 2016, Plaintiff saw her long-time treating physician, JoAnn Neubauer, complaining of low back pain, and she also showed Dr. Neubauer a sore on her left leg where her stump met her prothesis and complained that it prevented her from standing for more than short periods of time. (Tr. 320.) At that time, an x-ray of her lumbar spine showed slight rightward scoliotic curvature of the lumbar spine with mild degenerative changes at L5-S1 with loss of disc height. (Tr. 318.) Plaintiff returned to Dr. Neubauer in October 2016 reporting continued back and left leg pain. Dr. Neubauer observed that Plaintiff's prothesis was poorly fitted and caused her to be long-legged causing low back pain, and that her lumbar lordosis "maybe even early scoliosis." (Tr. 307–08.) She recommended Plaintiff have her prothesis refitted. (Tr. 308.)

---

[1]   Throughout this Opinion, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 16.)

2

Plaintiff reported in February 2017 that her stump had healed and she was having no issues with it. (Tr. 305.) She received a new prosthesis in June 2017 and Dr. Neubauer recommended she undergo physical therapy to adjust to it. (Tr. 342, 345, 362.) During June, July, and August 2017, Plaintiff continued to experience instability in her right knee and ankle and pain at the hips and low back. (Tr. 362, 367, 368, 371, 397, 399, 400.) In July, her therapist noted that Plaintiff continued to have gait abnormality and difficulty walking even with her new prothesis. (Tr. 366.) Plaintiff attended about four months of physical therapy, during which her provider noted some improved strength and reduced pain, however sometimes noting that Plaintiff continued to have low back pain. (Tr. 365–71, 386, 391, 394–401, 414, 418–19.) It was noted during that time that Plaintiff "has scoliosis . . . [and that] [s]he has a tilted pelvis due to her orthotic." (Tr. 389.) In September 2017, it was noted that Plaintiff "has significant scoliosis of the lumbar spine and this is due to the fact that she is an above the knee amputee on the left and she had a malfitting appliance and so she ended up rotating the hip and turning the lower spine." (Tr. 402.) It was also noted at that time that Plaintiff was "having a lot of difficulty with the upper extremity." (*Id.*) On physical examination, it was noted that she "has difficulty with overhead reach" and "difficulty with princer grasp and pain at the base of the thumbs bilaterally." (Tr. 404.) In October 2017, Dr. Neubauer noted during a visit after Plaintiff had an MRI that she "is still having a lot of difficulty with that right leg. She has a burning sensation to the thigh and sometimes a weakness[.]" (Tr. 415.) She also noted that Plaintiff has "difficulties bilaterally with the upper extremity numbness to the left hand more than the right," but that "she is not having any difficulty with the upper

extremities right now." (Tr. 415.) The record does not show that Plaintiff engaged in physical therapy after October 2017, despite her provider's apparent plans to continue treatment. (Tr. 418–19.)

At an occupational therapy evaluation in November 2017, Plaintiff reported constant pain radiating from her neck to spine that increased with walking, sitting for extended periods, changing positions, and extended use of the upper extremity. (Tr. 379.) The occupational therapist referred Plaintiff for a functional capacity evaluation, which Plaintiff unfortunately was not able to attend because she had to go to Texas; Plaintiff did indicate that she wanted to reschedule if possible. (Tr. 23; Tr. 431.) In February 2018, upon her return to Minnesota, Plaintiff reestablished care and reported that at that time she was "having difficulty with her low back." (Tr. 430.) In April 2018, when Plaintiff was seen for low back pain, it was noted that Plaintiff "still has significant scoliosis of the thoracolumbar spine." (Tr. 458.)

## II.     Procedural History

Plaintiff filed for social security disability benefits on September 12, 2016, and her application was denied. (Tr. 55, 66.) Plaintiff reported in her initial Function Report to the Social Security Administration that her daily activities include spending time with family, preparing meals with multiple courses, shopping, and attending church on Sundays. (Tr. 215–19.) She stated she can complete personal care without assistance and do household chores such as laundry, ironing, and cleaning. (Tr. 215–16.)

On October 5, 2017, Plaintiff was denied benefits on reconsideration. (Tr. 86.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took

place on March 6, 2019. (Tr. 33–54, 103.) The ALJ denied Plaintiff's claim on April 23, 2019. (Tr. 26.) On February 15, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1–4), therefore making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   The ALJ's Findings and Decision

The ALJ followed the five-step analysis used to determine whether an individual is disabled for the purpose of Social Security benefits.[2] At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since August 31, 2016. (Tr. 18.) At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, degenerative disc disease with scoliosis, amputation of the left leg above the knee with prosthesis, fibromyalgia, upper extremity overuse syndrome, arthritis in right index finger and thumb, and right hand carpal tunnel syndrome. (Tr. 18–19.) At step three, the ALJ found that Plaintiff's impairments do not meet and are not medically equivalent to any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19–21.) Specifically, the ALJ found that Plaintiff's impairments do not meet the requirements of listings 1.05, 12.04, or 12.06. (*Id.*)

---

[2]   *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing 20 C.F.R. § 404.1520(a)-(f) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing other work.").

At step four, the ALJ evaluated Plaintiff's residual functional capacity ("RFC"). (Tr. 21–25.) A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quotations omitted); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that a claimant's "residual functional capacity is the most [she] can still do despite [her] limitations"). The ALJ is required to "determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (quotations omitted). After consideration of the medical opinions and other evidence in the record, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[3] with the following limitations:

> [N]ever operate foot controls with left foot; frequently handle items with both hands; frequently finger with both hands; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance as the term is defined in the Selected Characteristics of Occupations; frequently stoop; occasionally crouch, kneel, and crawl; able to understand, communicate, and read simple information in English; perform simple, routine, and repetitive tasks, using judgment related to simple work related decisions; occasionally and superficially interact with supervisors,

---

[3]    As defined in 20 C.F.R. § 404.1567(b), an RFC for light work –

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

> coworkers, and the public, such that work is rated no lower than 8 on the people scale of appendix B to the Dictionary of Occupational Titles, 1991 revised edition.

(Tr. 21.) Considering this RFC, the ALJ found Plaintiff unable to perform her past work. (Tr. 25.) At step five, however, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 25.) Therefore, the ALJ found Plaintiff not disabled under the Social Security Act. (Tr. 26.)

## ANALYSIS

### I. Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The Social Security Administration must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the

[RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Commissioner's decision will be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard "allows for the possibility of drawing two inconsistent conclusions." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). If it is possible to draw inconsistent conclusions from the record, and one of those conclusions represents the ALJ's findings, the ALJ's decision must be affirmed. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001) (stating that the court must affirm even if it would have weighed the evidence differently); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (concluding that substantial evidence in the record supporting a contrary outcome was not enough to warrant reversal).

## II.    Analysis of the ALJ Opinion

Plaintiff raises three issues on appeal. First, Plaintiff argues that the ALJ's RFC finding failed to consider significant limitations in Plaintiff's ability to stand, walk, and use her hands that are established in the record. (Pl.'s Mem. 4.) Second, Plaintiff argues that the ALJ improperly discounted the medical opinions of record, particularly that of

Plaintiff's treating physician. (*Id.* at 16–21.) And third, Plaintiff argues that the ALJ conducted a defective credibility analysis regarding her claimed limitations. (*Id.* at 21.) For these reasons, Plaintiff claims that the ALJ'S RFC finding is contrary to law and not supported by substantial evidence. (*Id.* at 1.)

### A. Medical Opinions of Record and RFC Determination

Because the alleged deficiencies in the RFC finding necessarily depend on the medical opinions of record, we consider the first two issues together. Plaintiff alleges that the ALJ failed to consider work-preclusive limitations established by the opinions of her treating physician, Joann Neubauer, DO, and consultative psychologist Patrick Carroll, MA. (Pl.'s Mem. 16–21.) Due to these limitations, Plaintiff claims she does not retain an RFC for light work, as determined by the ALJ. (*Id.* at 3–13.)

#### 1. Dr. Neubauer's Opinion

Dr. Neubauer is a doctor of osteopathic medicine at Affiliated Medical Community Centers in Willmar, Minnesota. (Tr. 320.) She has treated Plaintiff since at least September 30, 2016, for pain related to her amputation and prosthetic limb. (Tr. 320–22.) Dr. Neubauer saw Plaintiff on an almost monthly basis from September 2016 to at least November 2018, excluding periods where Plaintiff was in Texas or Mexico. (Tr. 298–300, 305–08, 315–16, 356–58, 362–64, 387–89, 402–05, 415–17, 420–22, 430–33, 439–45, 447–48, 458–60.) At issue here is Dr. Neubauer's February 22, 2019 opinion, in which she states in relevant part:

> [Plaintiff] is unable to do persistent standing, reaching, or pulling. She has an artificial lower extremity on the left and due to long-term ill-fitting it has caused her to have significant lumbar scoliosis and degenerative disc disease, which gives

9

> her chronic lower back pain. Also because of this she has had an overuse syndrome of her upper extremities with osteophyte complex or spurring in her low neck, which gives her episodes of weakness, numbness, and tingling to her upper extremities so fine motor grasp skills with her upper extremities is also difficult if it has been on a repetitive nature. She is seeking disability due to the musculoskeletal disease that she has.

(Tr. 478.)

The opinions of treating physicians are given greater weight by the Social Security Administration if they are "well-supported by medical evidence and are 'not inconsistent with the other substantial evidence in [the] case record.'" *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 553 (8th Cir. 2018) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).[4] However, "[s]uch opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." *Stormo v. Barhart*, 377 F.3d 801, 805–06 (8th Cir. 2004) (citing *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)). In addition to treating physicians, ALJs are required to consider the opinions of State and Federal agency medical or psychological consultants. 20 CFR § 404.1513a(b)(1). If any conflicts exist between medical opinions, the ALJ is responsible for resolving them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).

The ALJ must "always give good reasons" for the weight assigned to a treating physician opinion. 20 C.F.R. § 404.1527(c)(2). The regulations require the ALJ to

---

[4]  20 C.F.R. § 404.1527 has now been superseded by § 404.1520c, which states that "an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a plaintiff's] medical sources." 20 C.F.R. § 404.1520c. However, because Plaintiff's claim was filed before March 27, 2017, § 404.1527 still applies here.

10

consider the presence of examining or treating relationships, the nature and frequency of such relationships, the evidence supporting the opinions, the consistency of the opinion with the record as a whole, the specialization of the person giving the opinion, and any other factors that support or refute the opinion. 20 C.F.R. § 404.1527(c). Additionally, the longer a treating source has treated the disability claimant and the more times the claimant has been seen by a treating source, the more weight will be given to the source's medical opinion. 20 C.F.R. § 404.1527(c)(2)(i).

Here, the ALJ gave some weight to Dr. Neubauer's opinions but found that her opinion that Plaintiff was limited in her ability to persistently stand, reach, push, or pull and had difficulty engaging in fine motor grasp skills on a repetitive basis was "vague." (Tr. 24.) He also stated generally that Dr. Neubauer's treatment record did not objectively support greater limitations than those in the RFC.[5] (Tr. 24.) The Court finds that these were not good reasons for discounting the treating physician's weight.

Dr. Neubauer treated Plaintiff for several years and over the course of many visits. The record as a whole is not inconsistent with Dr. Neubauer's statement that Plaintiff was not able to persistently stand, reach, push, or pull. The records consistently reflect that Plaintiff had continued pain that was attributable at least in part by wearing a misfitting

---

[5] The entirety of the reasons provided by the ALJ for discounting the weight given to Dr. Neubauer was as follows: "This opinion is given some weight, particularly in terms of manipulative limitations. However, the opined limitations are vague, and Dr. Neubauer's treatment records set forth no ongoing objective findings to support more limitations than those set forth in the residual functional capacity (Ex. 3F; 6F; 10F). Therefore, no greater weight is given to this opinion." (Tr. 24.)

prothesis that over years caused scoliosis in Plaintiff's back. While the record contains some indication of improvement in pain with some physical therapy, it also shows that Plaintiff continued to suffer from ongoing pain that required further treatment. Therefore, Dr. Neubauer's opinions related to Plaintiff's back and leg pain are neither inconsistent with the record as a whole, nor "vague" when considered in context with Plaintiff's on-going treatment. Plaintiff also argues the ALJ should have provided more severe limitations in the use of her hands. (Pl.'s Mem. 4.) Dr. Neubauer's treatment records show that Plaintiff was diagnosed with tendinopathy caused by moving her wheelchair, De Quervain's tenosynovitis, and osteoarthritis of the thumb. (Tr. 356, 447.) The ALJ's explanation for why less weight was given to Dr. Neubauer's opinion regarding Plaintiff's manipulative limitations is likewise cursory and does not provide a "good reason" as is required.

It appears that the ALJ dismissed the physical functional limitations provided by Dr. Neubauer without first analyzing those opinions under the standards applicable to treating source opinions. Stating generally that the opinion was "vague" without considering the opinion within the context of that treating physician's records, and saying that treatment records "set forth no ongoing objective findings" to support more limitations without further explanation other than referencing three exhibit numbers are not good reasons. Therefore, the ALJ's RFC decision, as it stands now, is not supported by substantial evidence. *See Lowe v. Comm'r of Soc. Sec.*, No. 3:13 CV 2587, 2015 WL 868059, at *7 (N.D. Ohio Mar. 2, 2015) (stating that because "the ALJ does not specify which record in particular[] he relies on as proving an inconsistency in [the treating

physician's] opinion, and, more importantly, does not delineate that alleged inconsistency . . . there is no way for me to meaningfully review the assertion of inconsistency based on the grounds set forth by the ALJ, and so it is not a 'good reason' to discount Dr. Young's opinion"). Accordingly, this matter is remanded to the Commissioner for further proceedings so the ALJ can fully consider Dr. Neubauer's opinions and Plaintiff's physical limitations within the context of Plaintiff's treatment history. The ALJ must then reconsider Plaintiff's RFC and provide good reasons for the weight given to Dr. Neubauer's opinions.[6]

### 2. Opinion of Patrick Carroll, MA

Psychologist Patrick Carroll opined on both Plaintiff's mental and physical conditions. Plaintiff does not dispute that the ALJ properly discounted all of Carroll's observations on Plaintiff's physical pain and limitations because these areas were outside

---

[6] Plaintiff also argues that, in concluding she has an RFC for light work, the ALJ "ignored the testimony that [she] does not wear the prosthesis at home anymore when she is tired." (Pl.'s Mem. 24.) She testified that she instead uses a wheelchair. (Tr. 42.) However, the ALJ addressed Plaintiff's wheelchair use at step three, where he found that Plaintiff's impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19–21.) He found the wheelchair was prescribed only for temporary use while Plaintiff recovered from the sore caused by her old, defective prosthesis. (Tr. 19; *see also* Tr. 58.) Having already considered the issue, the ALJ did not re-state it in his RFC analysis. Furthermore, there is no indication in the record that Plaintiff uses the wheelchair outside of the home. Plaintiff has no current prescription or physician's recommendation to use the wheelchair. It appears Plaintiff's occasional use of the wheelchair is voluntary. Therefore, the ALJ's decision to not include a limitation regarding the use of a wheelchair in the RFC finding is supported by substantial evidence.

of his expertise.[7] (Tr. 24); *see Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003) (finding that an ALJ properly discounted a psychologist's opinion because it was based partly on physical impairments, an area outside of his expertise); *Shepherd v. Callahan*, 969 F. Supp. 526, 529 (S.D. Iowa, 1997) (finding a neurologist's opinion on the claimant's ability to perform sedentary work should be disregarded as outside of his expertise).

Plaintiff does contend, however, that the ALJ improperly discounted Carroll's opinion on Plaintiff's mental limitations. The Court disagrees. Regarding Plaintiff's mental limitations, Carroll opined that –

> [Plaintiff] has the capacity to understand instructions that would be a part of an entry-level work position . . . She would have difficulty interacting with fellow workers . . . Her ability to remember and follow through with directions will be compromised when she is in pain or when she is depressed.

(Tr. 377.) The ALJ discounted Carroll's opinion on pace,[8] and accounted for the other limitations in the RFC when he specified that Plaintiff could only perform "simple,

---

[7] Plaintiff does not challenge the decision to discount Carroll's opinion on her physical limitations. Plaintiff only challenges the ALJ's decision to discount Carroll's opinion with regard to Plaintiff's concentration, attention, pace of work, and ability to interact with coworkers. (Pl.'s Mem. 17.)

[8] Although Carroll's opinion regarding pace does not explain whether it is based on Plaintiff's mental, as opposed to physical, limitations (*see* Tr. 24, 377), it appears it must have been related to Plaintiff's physical limitations because Carroll found that Plaintiff's concentration and attention were adequate, her memory was good, and she had normal intellectual functioning. (Tr. 376.) Carroll did note these abilities would be comprised during periods of pain or depression. (Tr. 377.) However, Plaintiff frequently reported that she was *not* depressed, and her periods of depression may have been exacerbated by her noncompliance with treatment. The ALJ properly discounted Carroll's opinion on Plaintiff's physical pain as outside his expertise. (Tr. 24.) The ALJ also noted that

14

routine, and repetitive tasks," and "occasionally and superficially interact" with others. (Tr. 21.)

Plaintiff argues that "Mr. Carroll's initial statement that Plaintiff has the *capacity* to understand instructions [for] entry-level work" means only that she can understand the work, not perform it. (Pl.'s Mem. 20–21.) However, when Carroll states that Plaintiff can understand entry-level work instructions, but "[t]he pace of her work would be slow," the implication is that she can perform the work, albeit slowly. (Tr. 377.)

Plaintiff also argues that the ALJ, in limiting her to simple, routine, and repetitive work, did not adequately address Carroll's opinion that Plaintiff will have difficulty remembering and following through with directions when she is depressed (or in pain). (Tr. 377.) Plaintiff's depression, however, was intermittent, and the record does not support that it affected her concentration to a degree that it would require a further limitation than what the ALJ provided. Though Plaintiff experienced periods of depression or anxiety, she was also found to not have anxiety or depression on several occasions. (Tr. 299, 363, 377, 388.) She did not participate in psychotherapy and was never hospitalized for mental health reasons. (Tr. 24, 376–77.) Even though Dr. Neubauer prescribed Plaintiff anti-depressants, she chose to stop taking them during her extended trips to Texas and Mexico. (Tr. 430, 443.) And, when Plaintiff was not in pain or depressed, Carroll found her concentration, memory, and judgment to be adequate. (Tr. 376.)

---

Plaintiff herself only alleged issues with pace due to physical, not mental, symptoms. (Tr. 20, 214–21, 241–48.)

In addition to considering this evidence of record, the ALJ discussed the opinion of a state agency medical consultant at step three, where he found the consultant's conclusion that Plaintiff had "no more than moderate limitations" to be consistent with her "generally good mental status examinations, minimal treatment history, and lack of psychiatric hospitalizations." (Tr. 21.) The ALJ also considered Plaintiff's "generally negative mental status examinations" when finding that Plaintiff was able to perform simple, routine, and repetitive work. (Tr. 24.) When considering the record as a whole, these facts constitute substantial evidence supporting the ALJ's mental limitations in the RFC. *See Howard v. Massanari*, 255 F.3d 577, 582–83 (8th Cir. 2001) (holding that "the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [claimant's] deficiencies in concentration, persistence, or pace" and "borderline intellectual functioning.").

### B. ALJ's Credibility Determination

Plaintiff also argues the ALJ conducted a defective analysis of her credibility when determining her RFC. The ALJ found that while Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms" were not supported by the record. (Tr. 22.) When analyzing subjective complaints, the ALJ must consider the entire record, including factors such as the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* 20 C.F.R. § 404.1529(c)(3). The

ALJ need not explicitly address each *Polaski* factor, so long as he "acknowledges and considers those factors before discounting a claimant's subjective complaints." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ also need not credit a claimant's subjective complaints of pain if they are inconsistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(3).

Here, Plaintiff complains that use of her hands, extended use of the upper extremities, sitting for long periods, changing positions, and walking aggravate her symptoms. (Tr. 379.) Because this Court is remanding this matter to the Commissioner for further proceedings so the ALJ can fully consider Dr. Neubauer's opinions regarding Plaintiff's physical limitations within the context of Plaintiff's treatment history—both with respect to Plaintiff's upper and lower extremity impairments—and because the ALJ on remand will then reconsider Plaintiff's RFC, the ALJ may, in light of this full review, have reason to reconsider his credibility findings as well. Therefore, the Court will not at this time make any ruling as to the ALJ's credibility findings from his earlier decision.

## ORDER

Based on the foregoing, and on all files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) is **GRANTED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. No. 20) is **DENIED**;

3. The matter is remanded to the Commissioner for further proceedings

pursuant to 42 U.S.C. § 405(g) (sentence four). On remand, the ALJ should evaluate the opinions of Dr. Neubauer regarding Plaintiff's physical limitations consistent with this Court's Order. After such evaluation, the ALJ should reconsider Plaintiff's RFC and reconsider steps four and five of the sequential-evaluation process.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  September 7, 2021  　　　　　__s/ Becky R. Thorson_____
　　　　　　　　　　　　　　　　　　BECKY R. THORSON
　　　　　　　　　　　　　　　　　　United States Magistrate Judge